IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:14-CV-00470-F

|  |  |  |
|---|---|---|
| MAD PANDA, LLC, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| GUNNAR OPTIKS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the Motion to Dismiss or, in the Alternative, to Transfer

[DE-15] filed by Defendant Gunnar Optiks, LLC ("Gunnar"). Gunnar seeks to dismiss this

action or transfer it to the Southern District of California, arguing (1) there is no definite or

concrete dispute between Gunnar and Plaintiff Mad Panda, LLC ("Mad Panda") and (2) Mad

Panda anticipatorily filed this action. For the reasons set forth below, Gunnar's Motion to

Dismiss or, in the Alternative, to Transfer [DE-15] is DENIED.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff Mad Panda brought this declaratory judgment action on August 18, 2015. *See*

Complaint for Declaratory Judgment [DE-1]. Mad Panda seeks a declaration that it is not

infringing on any of Gunnar's intellectual property rights by (1) trademarking and using the

"NoScope" name and logo in its company name, products, and marketing materials; (2) using the

name Gunnar in comparative advertising; or (3) manufacturing and selling certain products,

specifically Mad Panda's "computer glasses." *Id.* ¶¶ 1, 3.

The controversy in this case began on August 6, 2014, when Gunnar's attorney's sent Mad Panda's management a letter entitled Gunnar Optiks, LLC – Infringement Issues (the "Letter").[1] Gunnar insists this letter was sent as an attempt to foster settlement discussions. The beginning of the letter states

> You should also be aware that GUNNAR is serious about protecting its intellectual property rights and has had very favorable results in all matters it has needed to litigate. At this point in time, GUNNAR's attention is focused on the apparently infringing sales of Mad Panda, LLC . . . .

Letter [DE-19-2] at 1. The letter goes on to discuss Gunnar's issues with (1) Mad Panda's use of the Gunnar name and other Gunnar trademarks in comparative advertising; (2) features on Mad Panda's eyewear that Gunnar suggests "may read" on Gunnar's patents; and (3) Mad Panda's use of the "NoScope" trademark, for various business purposes. *See id.* at 1-2.

The letter also included a laundry list of demands that Gunnar wanted fulfilled as part of a settlement. These included, among other things, (1) Mad Panda giving up all use of the term "NoScope," including its business website;[2] (2) Mad Panda accounting for and compensate Gunnar for all alleged "infringing sales;" (3) Mad Panda allowing Gunnar to destroy all of the allegedly infringing products; and (4) Mad Panda allowing Gunnar to examine the NoScope Demon line of eyewear so that Gunnar could definitively declare that the product infringed on its patent. *See id.* at 2. Not satisfied with that, Gunnar also threatened that, because Mad Panda was now on notice that the NoScope Demon line possibly infringed on Gunnar's patents, Gunnar would take any further production or sale of the line as willful infringement and pursue punitive damages and attorney's fees. *See id.*

---

[1] The Courts factual recitation here is taken from Gunnar's Demand letter [DE-19-2] and the Declaration of Michael Agosta [DE-19]. The court may consider "documents incorporated into the complaint by reference" when deciding a Rule 12(b)(6) motion. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[2] Mad Panda operates a website with the URL https://www.noscopeglasses.com/.

2

In response to receiving Gunnar's demand letter, Mad Panda retained counsel and filed this declaratory judgment action, seeking a declaration that Mad Panda's business activities do not infringe on any of Gunnar's intellectual property rights. *See* Agosta Decl. [DE-19] ¶ 38. Shortly thereafter, Gunnar filed suit against Mad Panda in the Southern District of California, alleging that Mad Panda's products infringe on Gunnar's trademark rights, but making no claims with respect to Gunnar's patents. This Motion to Dismiss or, in the Alternative, to Transfer [DE-15] followed on Oct. 10, 2014.

## II.     DISCUSSION

### A.     Motion to Dismiss

#### i.     Lack of a definite and concrete dispute

Gunnar argues that Counts Three and Four of the Complaint should be dismissed because no definite or concrete dispute exists with respect to Gunnar's patents. The court disagrees.

Jurisdiction in a declaratory judgement action extends only to cases or controversies under Article III of the United States Constitution. *See SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1378 (Fed. Cir. 2007). In order to have a basis for a declaratory judgment action, the facts alleged must, "under the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Declaratory judgments are governed by 28 U.S.C. § 2201, which states that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is . . . sought." *Id.* The Supreme Court has held that when a declaratory judgment plaintiff is in the position of either pursuing potentially tortious behavior or

3

abandoning that which it claims it has a right to do, declaratory judgment jurisdiction exists. *See MedImmune*, 549 U.S. at 129-134.

In order to meet the actual case and controversy requirement in a patent declaratory judgment action, the totality of the circumstances must reasonably give rise to the interpretation that the patent holder is, at a minimum, implicitly asserting its rights under the patent. *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1363 (Fed. Cir. 2009). Under facts similar to the instant case, the Federal Circuit found that letters suggesting possible patent infringement and requesting more information was enough to satisfy the actual case or controversy requirement. *Id.* at 1363-64.

In *Hewlett-Packard*, patentee Acceleron initiated contact with Hewlett Packard via letter. *Id.* at 1360. In the letter, Acceleron stated, "I am writing to call your attention to the referenced patent . . . . We would like an opportunity to discuss this patent with you." *Id.* The letter set a deadline for a response, but did not state what the outcome would be if Hewlett-Packard chose not to respond. *See id.* Acceleron later refused Hewlett-Packard's offer of a 120-day period where both sides agreed not to file an action. *Id.* Acceleron further demanded that Hewlett-Packard comply with its offered terms. *Id.* at 1360-61. Acceleron argued that the communication did not create a case or controversy, as the letters did not accuse Hewlett-Packard of infringement or threaten a lawsuit. *Id.* at 1362. The Federal Circuit disagreed, noting that a company cannot avoid creating a case or controversy by cleverly crafted language that avoids magic words like "infringement" or "litigation." *Id.* In finding Acceleron had implicitly asserted its patent rights, the court considered the following facts to be highly relevant: (1) the patent holder's initiation of direct contact with the plaintiff, (2) the language used in the letter, and (3) the short deadline for response. *Id.* at 1363. Given those facts, the court held that it was not

4

unreasonable for Hewlett-Packard (1) to interpret the letters as implicitly asserting Acceleron's rights, and (2) to respond by filing a declaratory judgment action.

The facts in the present case are more compelling than those presented in *Hewlett-Packard*. Gunnar did all the things the court identified in *Hewlett-Packard* as facts indicating implicit assertion of patent rights. First, Gunnar directly contacted Mad Panda. Second, the language of the letter clearly suggested patent infringement. *See* Letter [DE-19-2] at 2 (stating that "[i]n addition to the infringement on GUNNAR's trademarks, MAD PANDA's [computer glasses] incorporates a number of features that may read on GUNNAR's patents, and would give rise to issues of patent infringement"). Third, Gunnar gave a short timeline for Mad Panda's response. *Id.* at 3. ("GUNNAR requests that you contact [Gunnar's attorney] within 10 days of this letter so that we can discuss all these matters.").

However, Gunnar went above and beyond what Acceleron asserted in *Hewlett-Packard*. The additional assertions Gunnar made include (1) opening the letter discussing its previous successful intellectual property litigation, (2) specifically telling Mad Panda that it was now on notice that its NoScope Demon line possibly infringed on Gunnar's patents, and (3) threatening Mad Panda that Gunnar intended to pursue punitive damages and attorney's fees for intentional infringement if Mad Panda continued creating products. *Id.* at 2-3. As *Hewlett-Packard* demonstrates, the patent holder need not have asserted infringement with absolute certainty in order to be construed as an implicit assertion of rights. *See Hewlett-Packard*, 587 F.3d at 1363. Gunnar's letter does not just implicitly assert patent rights, as was the case in *Hewlett-Packard*. Instead, Gunnar's letter openly asserts those rights. For the foregoing reasons, Gunnar's motion to dismiss Counts Three and Four of the complaint is DENIED.

## ii.   Anticipatory Filings

Gunnar also argues that the remaining counts of the Complaint should be dismissed because this action was anticipatorily filed. Again, the court disagrees. Generally, the action filed first in time receives priority over a later filed action. *Ellicott Mach. Corp. v. Modern Welding Co., Inc.*, 502 F.2d 178, 180 (4th Cir. 1974). Courts apply a three factor test to determine if the first-to-file rule applies: (1) the chronology of the filings; (2) the similarity of the parties involved; and (3) the similarity of issues raised. *See Nutrition & Fitness, Inc. v. Blue Stuff, Inc.*, 264 F. Supp. 2d 357, 360 (W.D.N.C. 2003). However, courts may deviate from the first-to-file rule under special circumstances. *Id.* These special circumstances include (1) forum shopping, (2) anticipatory filing, and (3) bad faith filing. *Id.* If a court finds a basis to deviate from the first–to-file rule, it can elect to dismiss the case, stay the case, or transfer the case to a more appropriate venue. *Id.*

Gunnar asserts that deviation from the first-to-file rule is warranted here because Mad Panda's suit is an "anticipatory filing." Anticipatory filings are those filings where, knowing that a suit is imminent, one party rushes to the courthouse to file the action with some improper motive. However, simply because a potential tortfeasor has filed a declaratory judgment action does not automatically mean the filing was anticipatory. *See Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1348 (Fed. Cir. 2005). Courts consider the facts and circumstances of the individual case to determine if a filing is anticipatory. *Id.* In sum, the decision to disregard the first-to-file rule is an equitable determination made on a case-by-case basis. *Nutrition & Fitness*, 264 F. Supp. 2d at 360.

Declaratory judgment actions hold an interesting positon in the case law regarding the first-to-file rule. The purpose of the declaratory judgement is to alleviate the *in terrorem* choice

6

potential tortfeasors face between incurring more liability and abandoning their enterprises. *Hewlett-Packard*, 587 F.3d at 1362 (citing *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 734-35 (Fed. Cir. 1988), *overruled on other grounds by MedImmune*, 549 U.S. 118). That is, they are a means to ease legal uncertainty. However, when a natural defendant files a declaratory judgment action, courts are immediately suspicious of the filer's intent. Still, absent showing that some basis for deviation from the first filed rule exists, a declaratory judgment action should be accorded the same precedence as any other first filed action. *Elecs. for Imaging*, 394 F.3d at 1348 (citing *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993), *abrogated by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995)).

In determining if a party has rushed to the courthouse, courts consider a number of factual circumstances. Examples of these factual circumstances include engaging in ongoing, good faith settlement discussions; concealing having already filed for declaratory judgment; disregarding applicable choice of forum clauses; knowing the natural plaintiff was imminently going to file litigation in another jurisdiction; and omitting controversies between the parties in the declaratory judgement action. *See, e.g.*, *T2 Prods., LLC v. Advantus Corp.*, No. 3:14-CV-00193-GCM, 2014 WL 4181932, at *2 (W.D.N.C. Aug. 31, 2014) (holding the suit was an anticipatory filing when the declaratory judgment plaintiff concealed the filing from the defendant, failed to allege all the claims between the parties, and filed in a different jurisdiction than the one specified in an applicable choice of forum clause); *Family Dollar Stores, Inc. v. Overseas Direct Imp. Co., Ltd.*, No. 3:10-CV-278, 2011 WL 148264, at *4, 5 (W.D.N.C. Jan. 18, 2011) (holding the suit was an anticipatory filing when the declaratory judgment plaintiff cancelled a scheduled settlement discussion and filed suit, after settlement discussions had been ongoing for months). None of these circumstances exists in the present case.

There are no facts here that indicate Mad Panda's declaratory judgment filing had any bad faith intent. First, there were no ongoing good faith negotiations. Gunnar's demands for settlement were unreasonable and coercive, unlike the precedent on which Gunnar relies, where there was a good faith effort to negotiate. Gunnar's laundry list of demands and threats regarding past and potential future litigation falls far short of a good faith attempt at negotiation. Second, Mad Panda never concealed the fact that it filed for declaratory judgment and in fact informed Gunnar the same day the suit was filed. Third, there is no choice of forum clause in effect here. Fourth, there was no unequivocal assertion that Gunnar was about to file litigation in another jurisdiction. Fifth, this action brings forth all the potential claims between the two parties. Notably, the pending litigation filed by Gunnar in the Southern District of California omits all patent claims.

Moreover, there was an ongoing risk of continued liability to Mad Panda if it took no action. This is the factual situation for which declaratory judgment was designed. Gunnar's coercive letter put Mad Panda in a positon where it had to choose one of two unacceptable options: risk ongoing liability or give up its business enterprise. While Gunnar may be the natural plaintiff in the infringement suit, it was also the antagonist here. Mad Panda's declaratory judgement filing was reasonable under the circumstances, and Gunnar has not shown any evidence of an improper motive for the filing. Therefore, Gunnar's motion to dismiss [DE-15] is DENIED.

## B. Gunnar's Motion to Transfer

The court holds that there is a concrete and definite dispute between the parties and that Mad Panda's filing was not anticipatory. Therefore, the court finds no basis to deviate from the first-to-file rule. For the same reasons leading to that conclusion, the court also declines to

8

transfer the case. Gunnar's arguments for dismissal or transfer hold no merit, and the court agrees that the balance of convenience favors maintaining this dispute in the Eastern District of North Carolina. Therefore, Gunnar's motion to transfer [DE-15] is DENIED.

## III.  CONCLUSION

For the foregoing reasons, the Motion to Dismiss or, in the Alternative, to Transfer [DE-15] is DENIED. The Clerk of Court is DIRECTED to continue management of this case.

This, the 6 day of August, 2015.

James C. Fox

JAMES C. FOX
Senior United States District Judge

9